Our affirmance of the judgment of the trial court was based entirely upon the premise that the estate of Luigarde Schmidt, deceased, was solvent, and we drew this conclusion from the finding of the trial court upon the original hearing upon the cross-petition of the defendants and the answer thereto.

Inasmuch as it now appears that the estate was insolvent, it follows that our former conclusion was improper. In the situation thus presented the motion of the plaintiff of March 11, 1940, to set aside the judgment of the court of February 24, 1940, should have been sustained, and the prayer of the answer of the plaintiff to the cross-petition of defendants "that the note and mortgage of the defendants be declared null and void" should have been granted.

Application for rehearing granted and judgment and order in conformity to this opinion.

GEIGER, PJ., BARNES & HORNBECK, JJ., concur.

## McDORMAN et v JOHNSON

Ohio Appeals, 2nd Dist, Clark Co

No 367. Decided Oct 29, 1937

W. Y. Mahar, Springfield, for plaintiffs-appellees.

Martin & Corry, Springfield, for defendant-appellant.

648

## OPINION

By BARNES, PJ.

The above entitled cause is now being determined on appeal on questions of law from the judgment of the Court of Common Pleas of Clark County, Ohio.

In the court below plaintiffs brought their action against the defendant praying for an accounting and the appointment of a receiver. The petition alleged a partnership between the plaintiffs and the defendant in March, 1926. The claim is made that the partnership in its origin was between Harry T. McDorman and Guy E. Johnson, and that the plaintiff, Helen L. McDorman was taken into the partnership in or about 1929. The subject of the partnership was claimed to be farming operations on a farm of some 230 acres, a life estate therein being held by the plaintiff, Harry T. McDorman.

The petition further sets out the terms of the partnership substantially as follows: The defendant, Guy E. Johnson, was to manage the farming operations for which he was to receive a compensation. The plaintiff, Harry T. McDorman, was to receive a return for the use of the farm, calculated on the basis of its value and the investment rate of interest on municipal bonds. The balance, if any, was to be divided. Under the original set-up the capital investment was to be $3,000.00. Of this amount Harry T. DcDorman furnished equipment then on the farm of the agreed value of $1,326.75. The contribution of Guy E. Johnson was borrowed from a bank, Harry T. McDorman signing the note as security. This note was paid down to about $550.00 through income from the farm.

Harry T. McDorman conveyed his interest in the farm of 230 acres to the Transcontinental Consolidated Operating Corporation.

On January 31, 1929, the Lagonda Citizens National Bank, of Springfield Ohio, having previously obtained a judgment against Harry T. McDorman in the sum of $1,229.09, brought its action in the Court of Common Pleas of Greene County, Ohio, to set the conveyance to the Transcontinental Consolidated Operating Corporation aside as being in fraud of creditors. The farm in question was located in Greene County, Ohio. Upon hearing the conveyance was set aside.

The life estate was ordered sold, being appraised at $1,000.00. At the sale it was bid off for approximately $4,600. Other judgment creditors intervened. Under the order of distribution none of the judgment creditors were paid in full. The balance due was a very substantial amount. In this same proceeding a receiver was appointed to take charge of the personal property consisting of stock and equipment on the farm. The said Guy E. Johnson was made a party to the proceedings in the Greene County Court. The personal property was sold as a whole and not merely the undivided interest of Harry T. McDorman. Some five or six hundred dollars' worth of property was sold to outside parties and was taken from the premises. The remainder was bid off and remained on the farm. It is in controversy as to who acquired title as to the undivided half being sold as the property of McDorman. There is no controversy that the physical act of buying in and settling for was done by Mr. Johnson. He was given credit for his half. The balance of $550.00 on the Johnson note was paid by a check executed by W. H. Galleher, he being an officer of the Delaware National Bank. McDorman claims that he had arrangements with Johnson through which they would buy in the personal property and continue their operations the same as before. In furtherance of this plan he executed his note through the Delaware National Bank in the sum of $1,479.05, and the proceeds of the note were placed to the credit of W. H. Galleher, the latter then signing a check in blank to be used by Harry T. McDorman to repossess himself of the one-half interest in the property.

This check was handed to Guy E. Johnson, and at Harry T. McDorman's request filled in for $1479.05, and turned over to the then receiver. There is very little conflict as to the technique under which this matter was handled.

McDorman is corroborated by W. H. Galleher. Johnson does not admit that McDorman acquired any interest in the property through this method of handling. He makes the claim that some months later he purchased this personal property from the bank, giving his note for the same. This claim is not corroborated.

McDorman also makes the claim that his note of $1,479.05 has been paid off with the exception of $50.00. W. H. Galleher corroborates this claim to the point that there has been a very substantial payment of the amount through the liquidation of collateral.

At the sheriff's sale of the real estate in Greene County, the purchaser was W. H. Galleher, at the sale price of $4,600.00. The sale was confirmed, deed ordered and executed to the said W. H. Galleher. Galleher was presumably acting for the Delaware National Bank, the latter being one of the judgment creditors of Harry T. McDorman.

Claim is made by the plaintiffs that following the sheriff's sale he made contract with W. H. Galleher to repurchase the life interest in the farm, and in furtherance of the plan executed his note to Galleher for the bank, in the amount of $4,600.00. All the arrangements as to reclaiming the farm and the personal property were claimed to be known to Johnson. In the evidence claim is made by Johnson that he has purchased the life estate in the 230 acres on a land contract and that the amount agreed to be paid was $1,000.00, payable in three equal annual payments without interest. At the time of the trial the three years had expired, but no payments had been made.

Plaintiffs in their petition set forth that Johnson has procured loans and given chattel mortgages against the partnership property without the knowledge or consent of the plaintiffs.

The defendant, Johnson, denies the existence of a partnership and claims he owned all the property individually.

Through the pleadings and the evidence we have presented a tremendously involved situation. The trial court found that plaintiffs have an interest in the property and appointed a receiver.

Counsel for appellant presents the following assignment of errors:

1. The court erred in finding that plaintiff had an interest in the property which is the subject of this action, and in appointing a receiver therefor as set out in the order of May 26, 1936.

2. The court erred in granting the prayer of plaintiffs' motion for the appointment of a receiver for the property described in the petition and in failing to find that a partnership existed between the parties as set out in its order of May 26, 1936.

3. The court was without jurisdiction to appoint a receiver for the property described in the petition.

4. The finding and order of May 26, 1936, constitute an abuse of discretion of the trial court.

5. The finding and order of May 26, 1936, were unsupported by the evidence in the case and manifestly against the weight of the evidence.

6. The court erred in overruling the motion of appellant to dismiss the application for the appointment of a receiver.

Assignments of error, Nos. 1, 2 and 3, are grouped and discussed together, since they raise substantially the same legal question. We group all five assignments of error.

Briefly and concisely, counsel for appellant contend:

1. That no partnership existed.

2. That the trial court failed to find the existence of a partnership.

3. That such finding of the court was a requisite to the appointment of a receiver.

4. That the relation between plaintiffs and defendant was that of landlord and tenant, and by reason of the judgment of the Court of Common

650

Pleas of Greene County the question is res adjudicata.

5. That the record can not sustain a finding that there is a partnership.

We do not think that the relationship of landlord and tenant is repugnant to a relation of partnership as to certain activities on the farm. It is not infrequent for a landlord and tenant to have agreements incorporated in their contract of lease whereby they have a partnership arrangement for owning and feeding live stock. It very frequently happens that the owner of a building leases the same to a mercantile business in which he is a partner.

There was no written contract between McDorman and Johnson. If the verbal contract was as claimed by McDorman, it would constitute a partnership in certain operations. Johnson is in practical agreement with McDorman as to the arrangements originally made. The divergence arises following the sale of the real estate and personal property through the proceedings in Greene County. Johnson contends that McDorman was sold out and hence could not thereafter continue as a partner; the claim of McDorman being that while he was sold out he immediately reacquired under a plan and arrangement known to Johnson.

We are unable to conclude that the judgment entry in the Common Pleas Court of Greene County renders the questions here involved in any sense res adjudicata. So far as is disclosed there was no controversy in Greene County between McDorman and Johnson. It there was sought to know the quantum of interest, if any, that Johnson held in the personal property. He held a one-half interest and it is immaterial whether this is designated as owning it as a tenant or as a partner.

We know of no authority requiring the trial court to have the journal entry make a showing of fact as a condition precedent to the appointment of a receiver. Of course, where request is made, the court must make his separate findings of fact and law. No such request was made in the instant case. There are instances where the statute specifically prescribes certain findings as a condition precedent. As a matter of course in such instances the statutory provision must be complied with. We know of no such provision relating to the appointment of receivers. A reviewing court merely needs to look to the sufficiency of the record to sustain the appointment, regardless of the reasons.

Sec. 11891 GC, relates to the appointment of receivers. The pertinent part of the section reads as follows:

"11891. Appointment of Receiver. A receiver may be appointed by the supreme court or a judge thereof, a court of appeals or a judge thereof in his district. a common pleas court or a judge thereof in his district, or the probate court, in causes pending in such courts respectively, in the following cases:

1. In an action * * * between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of a party whose right to or interest in the property or fund or the proceeds thereof is probable and when it is shown that the property or fund is in danger of being lost, removed or materially injured."

It will be noted that this section does not limit the right of action as between partners, but extends the right to others jointly owning or interested in any property or fund.

It is our conclusion that the evidence, taken as a whole, warrants the finding of a partnership. We do not think that the fact that the journal entry does not make a finding of partnership but instead uses the phrase "that plaintiffs have an interest in the property described in the petition," is of any moment. The curative provisions of §11364 GC, will meet any possible defects in the entry.

We are not able to find any evidence warranting a finding that Mrs. McDorman was a partner. She was no more than a creditor.

Had we been determining this question originally, it is possible that we might have declined the appointment of a receiver until after the hearing on the accounting. There is the possibility that the accounting will solve the entire problem without more ado as to the disposition of the personal property. In making this comment we place ourselves in a possibly conflicting position. It is determined without cavil that the appointment of ▆▆▆▆▆ a receiver is an extraordinary remedy and never to be exercised unless the evidence is clear and convincing that it is necessary to the preservation of the possible rights of the complainant. If there is another adequate remedy a ▆▆▆▆▆ receiver should not be appointed.

Another rule of law is that a judgment before a reviewing ▆▆▆▆▆ court is presumptively correct and not to be interferred with unless the error is manifest.

In the instant case the situation is so involved that we are unwilling to say as a matter of law that the appointment of a receiver was improper. A receiver in contempla- ▆▆▆▆▆ tion of law represents both parties and should in fact take that attitude. It is highly improper for a receiver to become an advocate in the interest of either party before he has made an analysis and knows the facts. He may have very little to do, other than to strive to bring these parties together, in view of the contention as to whether or not the personal property on the farm is partnership property. The trial court did not go so far as to determine what was and what was not partnership property, nor under the state of the record could he have so done. Naturally, we make no such finding. We do find that the evidence warrants the finding of the existence of a partnership between Harry T. McDorman and Guy E. Johnson, and that no accounting has been made. The record also presents a case demanding an accounting. Whether or not it is for a period of the entire term, will depend upon the facts.

The case of **McGrath v Cowen et, 57 Oh St 385**, is interesting and enlightening.

The first syllabus reads as follows:

"1. The appointment of a receiver in an action between partners, though appearing to have been made by consent, does not estop the defendant from taking issue on the allegations of the petition which relate to the rights of the parties or of creditors in the partnership property, nor from attacking the validity of mortgages made by the plaintiff of the partnership property without the defendant's consent; but the existence and membership of the firm, as alleged in the petition, is not thereafter open to dispute by the parties."

Under this principle of law the rights of the defendant are fully protected. The trial court felt that the protection of the possible claims of the plaintiffs demanded the appointment of a receiver. He had before him all witnesses and thereby was better able to pass on the disputed facts than would be this court.

We find no prejudicial error. The judgment of the lower court will be modified by eliminating Mrs. McDorman as a partner, and the cause remanded for further proceedings.

Costs in this court will be adjudged against the appellant.

HORNBECK & GEIGER, JJ., concur.